IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. 05-134 |
| | ) | |
| WILLIE JAMES MURPHY, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Willie James
Murphy, Jr.'s ("Mr. Murphy," "Defendant") Motion to Suppress.
Mr. Murphy is accused of being a Felon in Possession of a
Firearm, in violation of 18 U.S.C. § 922(g)(1).  Mr. Murphy seeks
to suppress and exclude from the government's case-in-chief any
evidence obtained as a result of a seizure and search of him by
security and law enforcement officials on February 3, 2005, as
well as any statements he made.  The Court held an evidentiary
hearing on this motion on Friday, June 17, 2005. Two issues are
before the Court.  The first issue is whether Mr. Murphy was
seized as the result of a valid investigative detention under
*Terry v. Ohio*, 392 U.S. 1 (1968)- that is, whether the officer or
officers who stopped him had specific articulable suspicion that
justifies a belief that a crime has been or is being committed.
*Id.* at 30; *United States v. Sokolow*, 409 U.S. 1, 7 (1989).  The
second issue before the Court is whether the officer or officers
had the authority to search Mr. Murphy pursuant to a lawful

arrest for obstruction of justice by force at the time of his detention in the Loss Prevention Office of the Giant Foods Store. The Court denies Mr. Murphy's motion to suppress because the officer who stopped him and the officers who frisked him had a specific articulable suspicion justifying a belief that a crime had been or was being committed, and the officers could point to specific facts from which they could reasonably infer that the suspect was armed and dangerous. Because the Court holds that the stop and frisk was justified under *Terry*, the Court declines to address the second basis for exclusion of the statement.

## I. BACKGROUND

*Testimony At the Evidentiary Hearing*

   *The Giant Food Stores Entrance*

Officer Dean Tran ("Officer Tran"), an officer with the Fairfax County Police Department, testified that on February 3, 2005, at approximately 9:14 p.m., he received a report from a dispatcher to go to the Giant Foods Store ("Giant") at 3480 South Jefferson Street in Falls Church, Virginia. The dispatcher told Officer Tran that two black males and one black female were suspected of shoplifting and that store security was trying to stop them from leaving the store. According to the officer's event log, he was flagged down by a "frantic store employee" who advised him that the suspects were trying to leave the store with store merchandise. Gov't Ex. 1 at 2.

2

Officer Tran testified that when he entered Giant, he observed two black males and a black female arguing with Ms. Annjanette Foss ("Ms. Foss"), the store security officer, near the customer service area approximately fifteen to twenty feet from both front entrances to the store.  These individuals were later identified as Mr. Murphy, Maurice Devon Evans ("Mr. Evans"), and Angela Scott ("Ms. Scott").  Officer Tran had responded to calls at Giant before and was familiar with Ms. Foss.  Officer Tran observed that the three individuals were "loud and uncooperative," and they were arguing with Ms. Foss. Ms. Foss testified that before Officer Tran arrived, Mr. Murphy took out a wad of money from his right pocket and asked her why he would shoplift when he actually had money.  Officer Tran asserted that Mr. Murphy was verbally argumentative and persisted in disputing the accusation of shoplifting.

In addition, Officer Tran testified that Mr. Murphy's back was to the customer service desk, he was standing about ten to twelve feet away from Mr. Murphy, and Mr. Murphy repeatedly put his hand near his pocket and toward his back.  Ms. Foss also testified that she had seen the defendant reaching toward his back, but that she did not inform Officer Tran of this immediately when he arrived at the store.  Next, Officer Tran testified that he directed the defendant and the other suspects to keep their hands out of their pockets.  *See* Gov't Ex. A, at 2 (stating, "[a]s I attempted to stabilize the scene A#1 [Mr.

3

Murphy] and A#3 had to be told to keep their hands out of their pockets"). Further, Officer Tran testified that he observed a shopping cart nearby that was full of groceries but that he was not told of its significance. Upon review of Giant's store security camera tape, the Court notes that it did not observe Mr. Murphy putting his hands near his pocket or behind his back while standing in front of Officer Tran.

*The Loss Prevention Office*

Officer Tran was subsequently joined by two other officers, Delaney and Mergler. After conferring with Ms. Foss, Officer Tran testified that the three officers decided to "escort" the three individuals into the Loss Prevention Office ("LPO"). He told Mr. Murphy to go with him to the LPO to "get the situation figured out." Officer Tran testified that he put his hand on Mr. Murphy's elbow and escorted him up a set of stairs into the LPO. Upon reviewing the Giant security tape, the Court notes that Officer Tran did not put his hand on Mr. Murphy's elbow. Instead, Mr. Murphy appears to willingly accompany Officer Tran to the LPO. Ms. Foss testified that on their way up the stairs, she informed one or more of the officers that she had observed Mr. Murphy reaching behind his back at the entrance to the store.

The office where the officers took Mr. Murphy, Ms. Scott, and Mr. Evans was approximately 400 square feet in size and has

4

one door.  Officer Tran testified that upon arrival at the LPO,
Mr. Murphy and Ms. Scott were standing at different corners of
the table, and he requested that they sit down.  Officer Tran
testified that Mr. Murphy became irate and uncooperative,
complaining that "he knew his rights" and that no one was going
to lay a hand on him.  Officer Tran directed him to keep his
hands were he could see them.  Officer Tran then testified that
he and Officer Mergler decided to conduct a pat down of Mr.
Murphy and told him they were going to do so.  Officer Tran
testified that he grabbed the defendant by his left hand and
patted him down with his right hand.  Officer Tran again stated
that Mr. Murphy "got loud," did not want to put his hands behind
him, and again stated that he "knew his rights."  Officer Tran
testified that at that point Mr. Murphy tensed his muscles and
refused to put his hands behind his back.  The Court notes that
Mr. Murphy is six feet two inches tall and weighs 240 pounds,
while Officer Tran is five feet nine inches tall and weighs 185
pounds.  Upon questioning by the Court, Officer Tran admitted
that he was afraid of Mr. Murphy because of his size and was
worried that Mr. Murphy was stronger than him.  At this point,
the officer decided to grab Mr. Murphy's left hand and put a
handcuff on him.  Officer Mergler was on Mr. Murphy's right side
and Officer Tran was on his left.  Officer Tran testified that
they pushed Mr. Murphy against the wall and tried to stabilize
him against the wall but that Mr. Murphy resisted.  Officer Tran

could not restrain him and ultimately hit Mr. Murphy on the top of his head to put handcuffs on him.  Officer Tran testified that Ms. Scott observed this occurring, that she became "loud" and that the officers had to restrain her to prevent her from coming over.  According to Officer Tran, at this point, Mr. Murphy was under arrest for obstructing justice by force.  Next, Officer Tran put his hand inside Mr. Murphy's left pocket and found what appeared to be drugs.  In addition, he found a handgun concealed in the small of his back, money in his right pocket, and a house arrest bracelet from the District of Columbia on his left ankle. Mr. Murphy then exclaimed, "Shit, I carry that for protection."

Despite Officer Tran's testimony, the security tape of the encounter shows that when Mr. Murphy entered the LPO with the officers, he sat down in a chair at the table, contrary to Officer Tran's testimony that Mr. Murphy was standing.  All of a sudden and without apparent provocation, the tape shows that three officers pull Mr. Murphy out of his chair and forcefully thrust him against the wall, shoving his face against the wall.[1] From the tape, it does not appear that Mr. Murphy was being physically combative when he was lifted out of the chair and thrown against the wall.  The officers then thrust him into the seat and conducted a pat down while he was seated.

---

[1]  The Court notes that the store security tape does not contain audio, so it was unable to hear the conversation occurring between Mr. Murphy and the officers.

6

Officer Tran took Mr. Murphy to the police station where he was given the Miranda warning.  According to Officer Tran's testimony, Mr. Murphy stated that he had recently been shot, obtained the gun for protection, and bought it in the District of Columbia for $200.

*Procedural Posture and Brief Summary of Arguments*

The government indicted Mr. Murphy, charging him with violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm.  On June 7, 2005, Mr. Murphy filed this motion to suppress from the government's case-in-chief any evidence obtained as a result of the February 3, 2005 search and seizure, as well as any statements made by him on that date.  The defendant argues that Officer Tran had no specific articulable suspicion justifying a belief that a crime was committed or was being committed, in violation of *Terry v. Ohio*, and therefore, he was seized as a result of an invalid investigative detention. 392 U.S. 1.  Second, Mr. Murphy asserts that Officer Tran did not have the authority to search Mr. Murphy pursuant to a lawful arrest for obstruction of justice by force at the time of his detention because the arrest was not lawful.  The government counters by arguing that Officer Tran and the other officers present had reasonable suspicion that Mr. Murphy had committed a crime based on the dispatch's statements to Officer Tran, as well as Mr. Murphy's "disruptive and suspicious behavior when

7

confronted by the police." Gov't's Opp'n at 4. In addition, the government argues that once inside the store security room, Officer Tran was justified in attempting to pat down Mr. Murphy to ensure officer safety. *Id.* at 6. The Court held an evidentiary hearing on this motion on Friday, June 17, 2005.

## II. DISCUSSION

The Court denies Mr. Murphy's motion to suppress because the officers involved had reasonable articulable suspicion to stop and frisk Mr. Murphy under *Terry*. The Supreme Court upheld the constitutionality of stop-and-frisks in particular circumstances in *Terry v. Ohio*. 392 U.S. at 30. Specifically, it held that,

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he... makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry*, 392 U.S. at 30. In determining the validity of a *Terry* stop, a court must engage in a dual inquiry: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Swann*, 149 F.3d 271, 273-74 (4th Cir. 1998) (citing *Terry*, 392

U.S. at 19-20).

*The Terry Stop*

Officer Tran had an articulable reasonable suspicion that Mr. Murphy had engaged in criminal activity, and therefore, he was justified under *Terry* in stopping Mr. Murphy.  A police officer may stop and detain an individual when there is reasonable suspicion that justifies a belief that a crime has been or is being committed. *Terry*, 392 U.S. at 30; *see also Sokolow*, 490 U.S. at 7.  This reasonable suspicion must be based on articulable facts, and it depends on the totality of the circumstances, *Sokolow*, 490 U.S. at 7, including information known to the officer and any reasonable inferences drawn at the time of the stop.  *United States v. Crittendon*, 883 F.2d 326, 328 (4th Cir. 1989) (holding that officers had reasonable suspicion to stop and frisk when they responded to a burglary in progress, the defendant and his nephew were the only persons encountered in the vicinity of the reported crime, and the defendant's nephew attempted to flee during the officers' investigation).  The "reasonable suspicion" standard to stop and question an individual is not an onerous one, but an officer cannot rely on a hunch or an uncorroborated anonymous tip to establish reasonable suspicion.  *Compare United States v. Harris*, 39 F.3d 1262, 1268-69 (4th Cir. 1994) (holding officer had reasonable suspicion to stop vehicle when observed man leaving an apartment after

confidential informant advised drug delivery was imminent) *with Florida v. J.L.*, 529 U.S. 266, 270-74 (2000) (holding that officer did not have reasonable suspicion to stop individual based on anonymous tip that young black man at bus stop wearing plaid shirt was carrying a gun).  "Information of criminal activity given by a known reliable informant is enough to sustain a *Terry* stop."  *Harris*, 39 F.3d at 1269.

Officer Tran had a reasonable articulable suspicion that Mr. Murphy had been engaged in criminal conduct because he received a dispatch call that two black males and one black female were suspected of shoplifting at Giant.  Upon entering Giant, Officer Tran saw individuals fitting this description standing with Ms. Foss, the store security officer he already knew from prior dispatches to the Giant, who had notified the police of the shoplifting.  The dispatch call combined with a description of the individuals and the presence of those individuals with the store security officer satisfy the "reasonable suspicion" requirement of *Terry*.  Ms. Foss's calling of dispatch is the equivalent to a known reliable informant notifying the police of ongoing criminal activity, which, as the Fourth Circuit held in *Harris*, is "enough to sustain a *Terry* stop."  39 F.3d at 1269; *see also Swann*, 149 F.3d at 273-74 (holding a stop was justified at its inception when the police officer was told two black male individuals, one wearing a black leather jacket, were involved in a recent theft, and he stopped two individuals fitting that

description in the building's garage).

*The Terry Frisk*

Officers Tran, Mergler and Delaney conducted a valid frisk of Mr. Murphy under the relevant caselaw.  "Where the officer has 'reason to believe that he is dealing with an armed and dangerous individual,' he may conduct a reasonable frisk of the outer clothing for weapons."  *Swann*, 149 F.3d at 274 (quoting *Terry*, 392 U.S. at 27).  Furthermore, when an officer is engaging in a self-protective search, "he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."  *Sibron v. New York*, 392 U.S. 40, 64 (1968) (suppressing heroin obtained from a stop-and-frisk of a defendant who merely spoke with known narcotics addicts over an eight-hour period).  Nevertheless, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  *Terry*, 392 U.S. at 27.  Ms. Foss's testimony that she informed officers on the way up to the LPO that Mr. Murphy was reaching behind his back while she confronted him in the store's foyer, combined with Officer Tran's testimony as well as the statement in his report that he told the suspects to keep their hands out of their pockets, constitute facts sufficient to justify the frisk.  *See Terry*, 392 U.S. at 27 (upholding a stop and frisk for

officer safety of two men who were pacing up and down a street and looking into a store window); *see also Swann*, 149 F.3d at 274 (upholding a stop and frisk under *Terry* when "the suspects behaved nervously and in a threatening manner upon being approached and addressed"); *Crittendon*, 883 F.2d at 328 (upholding a stop and frisk under *Terry* when the defendant was one of only two people encountered in the vicinity of the reported crime, and the defendant's companion attempted to flee). Consequently, because Officers Tran, Mergler and Delaney had reasonable suspicion to stop and frisk Mr. Murphy, the Court denies his motion to suppress.

### III. CONCLUSION

Because the officers had a reasonable, specific, articulable suspicion to stop and frisk Mr. Murphy, the Court denies Mr. Murphy's motion to suppress. It is hereby

ORDERED that Mr. Murphy's motion to suppress is DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this ___22nd____ day of August, 2005.


                                    _____/s/_____
                                    Gerald Bruce Lee
                                    United States District Judge

Alexandria, Virginia
8/22/05